UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

MICHAEL THOMAS PAUL,
Plaintiff

Vs

CITY OF SAN ANTONIO/
CPS ENERGY THROUGH THE
CPS BOARD
Defendants

FILED
JUL 0 2 2015
CLERK, U S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

· DISTRICT COURT NO.
SA15-CV-173-DEA

PLAINTIFF'S FIRST
AMMENDED
COMPLAINT

## PLAINTIFF'S FIRST AMMENDED COMPLAINT

Comes now the "Plaintiff", Michael T. Paul, in propria persona, to allege and verify the following "Amended Complaint"

### I. PARTIES

PLAINTIFF:        Michael T. Paul.

              9123 Easy Street San Antonio, Texas 78266

              830-438-4172

              Mtp7389@hotmail.com

   1. Plaintiff resides in the state of Texas. Plaintiff is a customer of, and receives electrical service from, CPS.

DEFENDANT:    City of San Antonio

              by and through the CITY PUBLIC SERVICE BOARD

              ("CPS Energy, CPS")

              http://www.cpsenergy.com

   2. Defendant, having a main office in San Antonio is a corporation incorporated under the laws of Texas and is licensed to do business in Texas. Headquartered in San Antonio Texas, the Utility Company currently serves more than 765,000 electric

customers and 335,000 natural gas customers in a 1,515-square-mile service area that includes Bexar county, and portions of Atascosa, Bandera, Comal, Guadalupe, Kendall, Medina, and Wilson counties in and around the seventh largest city in the nation.

DEFENDANT:    General Electric power and water

4200 Wildwood Parkway Atlanta, GA 30339

(678) 844-5407

http://www.geenergymanagement.com

3. 1-210™ family of residential, single phase meters and our kV2c™ family of C & I poly-phase meters, GE provides a product suite that provides complete smart metering solutions.

DEFENDANT:    Itron, Inc.

2111 North Molter Road Liberty Lake, WA 99019-9469

(509) 924-9900

https://www.itron.com

4. Broad product portfolio includes electricity, gas, water, and thermal energy measurement and control technology; communications systems; software; and professional services.

DEFENDANT:    Outback Power

17825 59th Ave. NE, Suite B Arlington, WA 98223

(360) 435-6030

http://www.outbackpower.com/

5. OutBack Power is a privately held company headquartered in Arlington, WA, and is the leading designer and manufacturer of advanced power electronics for renewable energy, backup power, marine and mobile applications.

DEFENDANT:    Greg Abbott Governor of Texas

Prior Attorney General State of Texas in that capacity

300 W. 15th Street Austin, TX 78701

(512) 463-2100

https://www.texasattorneygeneral.gov/

6. Governor "Abbott" as Attorney General is named as a Defendant in his official capacity. According to his website at the time of this occurrence: "The Attorney General represents the people of Texas in civil and criminal matters....In addition, the Attorney General establishes and operates projects and programs to *__protect Texans__* from fraudulent, unfair, and illegal activities that **victimize consumers or threaten *public safety* and protection of the rights of the *elderly* and *disabled*.**

DEFENDANT:    Public Utility Commission of Texas

1701 N. Congress Ave. Austin, TX 78711-3326
General Information: 512-936-7015

hhtp:/www.puc.texas.gov

7. In Texas there are three major types of electricity providers: cities, cooperatives and private companies. **If a city provides your power,** you can **contact them** with

any concerns you have **regarding service or billing. Municipally owned electric companies typically are not overseen by state regulators.**

DEFENDANT:   The State of Texas

                      1300 N Congress. Austin, TX 78701

                      http://www.capitol.state.tx.us

8. The "State" of Texas is named as a separate defendant, as distinguished from Defendant PUCT. Thus, we include any other agencies, such as the Texas Commission on environmental quality and the Texas Health and Human Services Commission, which are commissioned to work in tandem with PUCT, and should have stepped in to prevent the gross negligence and mitigate the Plaintiff's injuries and damages. Defendant State remains liable for the misconduct of all of its agencies (including Defendant PUCT) and employees, whether or not they are specifically or separately named here.

## II. JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over these federal claims pursuant to 28 U.S.C. 1331 and 1343. 6. This Court has personal jurisdiction over all parties hereto because they are all residents of Texas and conduct their activities in Texas.

10. Venue is proper under U.S.C. 1391 in the Western District of Texas, because a substantial part of the events giving rise to the subject claims arose in this district

## III Verified Complaint

11. Plaintiff is stating the following as violations of U.S. Codes as reason to bring this suit and having filed this complaint in lower state courts that were not answered before limitations has grounds for instant suit and seeks reparations for all damages to equipment, medical costs, extra expenses to replace damaged equipment and the intentional suspension of electric service to a known Disabled occupant for no reason other than retaliation and states the following violations of law:

   a.) Breach of contract & Criminal misconduct -Wiretapping United States Code Title 18. Part 1. Chapter 119. § Sec2511; City of San Antonio CPS Energy and General Electric Power and Water SMART Meter I 21 O+C power POINT tracking, second 's of intervals invasion into the home to acquire specific knowledge that could only otherwise be learned by physical presence in same.

   b.) Violation of the United States Constitution, Bill of Rights, 41h Amendment; General Electric Power and Water SMART Meter I 210+C power POINT tracking, seconds of intervals, invasion into the home to acquire specific knowledge that could only otherwise be learned by physical presence in same.

   c.)§ 18 U.S. Code§113- Assault(EMR) Electromagnetic Radiation using General Electric I 210+c Meter to control OUTBACK POWER SMART Inverter to generate VAR(Volt Amp reactive) to balance FEEDER using system for purpose not authorized or agreed too.

d.) § 18 U.S. Code § 1030 a, 4 & 5c, Fraud and related activity in connection with computers " knowingly causes the transmission of a program, information, code, or commands without authorization, and as a result of such conduct, damages and causes loss over $5000.00 to a protected computer using SCADA Commanded SMART Inverter built by OUTBACK POWER, General Electric Power and Water SMART Meter I210+C, SCADA and module used to track ancillary services, reprogramming of firmware using wireless interface of inverter resulting in catastrophic failure of entire system leaving Plaintiff with no usable power source and no utility service during winter with temperatures between 0 to 17 Celsius at night.

e.) United States Code of Federal Regulations Title 21, Volume 8, PART 1010, Subpart A, Sec. §1010.2 (b) - NO Certification Labels for radiation emitting device as required. Itron meter and General Electric Power and Water SMART Meter I 210+C. Neither of the two SMART meters have the federally required labeling stating the devices emit RF microwave radiation.

f.) Sherman Act, 15 U.S.C. § 2- Anti Trust- exclusive supply contracts so that a newcomer may not be able to gain the inputs it needs to compete with the monopolist, the contracts can be seen as an exclusionary tactic in violation of Section 2 of the Sherman Act. CPS Energy has been stated to have "NO OVERSIGHT or REGULATING AUTHORITY" except for themselves and state

in own documentation that any owner wishing to sell PV system must give them first right of refusal.

## IV FACTUAL BACKGROUND

12. Plaintiff is 100% disabled and receives a limited income from United States Social Security Disability.
13. This a money suit for damages in the amount of Four Million Two Hundred and fifty Thousand Dollars arising from installation of two different SMART METERS on plaintiff's property in relation to a signed application for solar interconnection.
14. Instrument (contract) was signed by both parties constituting an agreement. (Document attached as Exhibit 3)
15. San Antonio is located in Texas, and is home to approximately 1,409,019 residents.
16. With very few exceptions, all residents and commercial enterprises receive electrical service from CPS.
17. CPS is Municipality owned but still follows limited regulatory oversight of the Texas Public Utilities Commission regarding only specific issues of grid reliability everything else they are self-regulating and have no oversight.
18. The CPS Energy Board of Trustees, in accordance with bond ordinances, governs the natural gas and electric utility. The Board consists of four citizens representing the four geographical quadrants of the city of San Antonio and the mayor of San Antonio who serves as an ex-officio member.

19. Defendant suspended electricity to plaintiff who had a positive $200+ balance and had never had his service disconnected for non-payment. Plaintiff suffered real hardship when electric service to his home was disconnected during the coldest months of the year as an act of retaliation for the filing in Bexar County District court requesting the removal of the devices from his home on October 2014. (Notice attached as Exhibit 4)

20. Plaintiff was left with damaged batteries from utility company's unauthorized use.

21. Plaintiff was left with inoperable inverter from utility company's unauthorized use.

22. Spoilage and loss of all foods inside freezer and refrigerator at a cost of over $300 when utility service was removed.

23. Plaintiff was subjected to excessive RF microwave radiation from two meters that:

    A. Caused severe pain in both legs daily requiring the need of hinged orthopedic braces,

    B. Caused blurred vision forcing plaintiff to use a magnifying glass to read his TV guide in his living room.

    C. Unexpected nose bleeds multiple times a day.

    D. Interference with short term memory.

    E. Cardiovascular abnormalities causing erratic heart palpitations with unusual blood enzyme levels.

    F. Plaintiff collapsed to the floor inside a Social Security Office in San Antonio unable to breath or move and was lucky to have been in a location to receive help resulting in transportation to an Emergency Room instead of being unattended on his own property.

19 Plaintiff acted in self-defense to remove the devices installed that caused the injuries and losses that are the subject of this claim.

20 The Defendant has rushed forward with the installation of so called "smart meters" throughout their entire service area despite serious health, security and privacy concerns raised by both citizens and legislators.

21 Plaintiff seeks an emergency injunction to protect tens of thousands of customers who are unaware of the hazard that's been placed on their property which will require the Defendant to **cease all smart meter installations** until a satisfactory alternative option for all CPS members has been made available weather through wired or wireless technology.

22 Plaintiff requests a restraining order and demands removal of any RF microwave radiating device within 2500 feet of his property and a ban preventing future placement of any by defendant without his express written consent.

23 Plaintiff has suffered grave physical harm. Severe emotional and psychological stress inflicted by electro-magnetic microwave RF radiation emanating from utilities SMART METERS.

24 Received installation of a smart meter at residence after stating that we didn't want a device that could be used to turn off the inverter due to medical devices that would be in use.

25 No opportunity to OPT OUT.

26 On May 8th, 2013 Plaintiff signed a letter of intent with Green Star Solutions to install a 9Kw Solar system on his property. Plaintiff was to purchase all equipment

necessary for installation. Also install new Service Panel, both the service and PV meter loops, Solar utility building, racking frame with piers, trenching with conduit. Green Star was to install all solar equipment and test for operability.

27 On June 6, 2013 Plaintiff received from Olivia Gomez of CPS Energy a Solar PV rebate application (Exhibit 2) and requested the following be submitted: Electrical One Line Drawing, Site Layout, Spec Sheets, and the Application for Interconnection (pages 61-71 of DER Manual). (Exhibit 1-a,b,c & 3 )

28 June 19th 2013 initial application for Solar PV rebate was submitted to CPS Energy along with requested documentation.

29 July 2nd application was rejected.

30 July 3rd Plaintiff received telephone call from Tod Diebel of CPS Energy that stated the installation of a transfer switch would allow for the approval of system.

31 July 9th 2013, Michael Higgins of Green Star Solutions contacted Tony Valdez, manager for Electric Service & Metering Standards to request how to correct defect.

32 On or around July 18 Plaintiff, attended an in person meeting with Tony Valdez and Tod Diebel John Leal at CPS Energy's main office in San Antonio. Also in attendance were Michael Higgins of Green Star Solutions. Also Scott A. Paul as Administrator of Johnny H. and Shirley A. Paul Trust. Mr. Leal coordinated the meeting.

33 Meeting did resolved the issue with transfer switch that was the reason for denying the application.

34 Plaintiff asked of CPS Energy before meeting adjourned if there were plans to install a new SMART METER which could be used to control the Inverter on plaintiff's power generating equipment. Plaintiff stated the whole reason for this system was a back-up should the grid fail or if it was interrupted. Since both parents were using medical devices that required power 24 hours a day the last thing he wanted was for anyone to have the capability to shut off his equipment which he would be powerless to prevent.

35 Mr Diebel answered the question stating that there would not be a smart meter used on the plaintiff's property since they were susceptible to being hacked by outside sources.

36 Plaintiff redrew required documents and Green Star Solutions re-submitted them on July 23rd, 2013.

37 August 5th, 2013 Olivia Gomez emailed Green Star second official denial off application requesting a confirmation that the inverter rated amperage was in fact the 33.3Amp as stated in the original June 19th application signed by Scott A. Paul.

38 Morning of Aug 22nd Plaintiff telephoned John Leal at CPS Energy and stated that the required changes were submitted. That approval was not forthcoming from the Solar Unit. Would he please look into the matter?

39 Afternoon of August 22nd plaintiff received approval to begin construction and had till November 2nd to be inspected. (Exhibit 2) Plaintiff alleges an intentional delay when all documentation had previously been submitted, reviewed yet this issue was not raised in the meeting July 18th.

40 Had Plaintiff not telephoned Mr. Leal and waited for approval, even more time would have been wasted shortening the equipment procurement and install time even more. If the system was not completed by the 120th day then the rebate would be denied and plaintiff would need to reapply during which he would have lost the $2.00 per watt and would then have received just $1.60.

41 October 05th, 2013 Construction began.

42 October 30th, 2013 Installation was completed on 36 280 watt SolarWorld PV panels, Three FM80 Outback charge controllers, and Outback Power's power center with GS8048 8Kw inverter, Hub 10 communications, FNDC battery bank monitoring and the Mate 3 system programming interface. All necessary wiring and balance of system components including 16 6volt 225ah AGM batteries. Total cost materials and labor before rebate and federal tax credit $ 47,661.40.

43 November 22nd 2013 Interconnect agreement was signed and solar system was interconnected to the grid. (Exhibit 3)

44 Equipment was performing as expected.

45 Solar generation was showing multiple days of 1000 + amp hours generated, days were consecutive at times.

46 Plaintiff had two month in succession of over generated power culminating in a ZERO bill.

47 Plaintiff noticed that the credit for his excess power at the end of each month was paid at a rate less than was stated before the installation.

48  President of CPS Energy Doyle Beneby issued a press release July 2013 stating systems commissioned before July 2014 would receive the original 1 for 1 rate which should have been .09 per KWh while Plaintiff was only credited with .0165.

49  Plaintiff called CPS to enquire regarding the discrepancy and was told he was being paid the avoided fuel costs and that was all he would receive.

50  After questioning the NET metering rate an engineer from CPS showed up early one morning late May and proceeded to plug a laptop computer into the billing meter. When questioned he stated he was downloading the meter usage for the billing cycle.

51  Plaintiffs solar system would later only have 2 days for the next 5 months where 1000 amp hours were logged as generated from the system and the longest solar days of the year had not even arrived.

52  Starting in April Plaintiff's system recorded a remote power up but because it was the only event for the next 4-6 weeks he assumed it was an error in the log.

53  Starting July 1 and continuing even after system was disconnected from the grid Plaintiffs solar system was accessed remotely nearly every single day and sometimes multiple times a day.

54  Plaintiffs billing was now showing an excessive use of received energy from the utility company as to incur a large bill each of the following months which was realized to be a command and control function utilizing the Smart Meters at the plaintiff's residence.

55  Plaintiff witnessed the entire system active at 12 am when entire system should have been deactivated since there was no sunlight.

56  Plaintiff contacted the manufacturer OutBack Power and described the incident to the engineer Ms. Wood who stated she didn't believe what he was telling her so he forwarded a video of the entire incident to her at which time there was never a response except to reprogram charge controllers in hopes that it would not occur again.

57  Plaintiff sustained damage to whole house water supply when his TERMINOX iron filter had the static memory wiped from magnetic pulses which caused it to revert to factory setting that allowed water borne iron bacteria contamination throughout property. It was necessary to replace the reverse osmosis from contamination as well as the Whirlpool water softener. Plaintiff had to install a chemical feeder and shock the enter water system with high levels of Chlorine to decontaminate the water pipes plus install two new whole house filters. Manufacturer of Terminox could no longer guarantee the tank Media was free from contamination if Media had become BOUND by the failure to receive back flushing that was scheduled for every 24 hours. The out of pocket expense to plaintiff caused him to have to go into debt by opening a PAY PAL credit account to pay for the necessary repairs which cost him $584.32.

58  Plaintiff was determined to ACCOUNT for the high energy usage numbers on his bill so he purchased individual circuit meters to record actual energy consumption on each individual branch circuit of his home. After installing two on the PV generated circuit and one on the water well circuit plus another on the circuit for the travel trailer had determined he was short one for the central a/c so he ordered

another and was awaiting its arrival in 5 weeks. Since he was short that meter he was still unable to get a true accounting of the energy he was using.

59  Before the last meter arrived one of the two that was connected to the solar generated circuit began to melt to the point of catching fire inside the main pane August 23rd 2014.

60  Plaintiff later discovered that the meter when purchased was only rated for real power not reactive because Mr. Diebel said system was not going to be used as the DER manual stated for systems above 25K he said the system was too small for them to use in that capacity. Since Plaintiff was told that his system would not be used to generate reactive power or VAR (Voltage Amps Reactive) the system was designed with the ground rod at the service panel instead of at the inverter. And the circuit meters bought were not bought with that rating in mind.

61  All through September Plaintiff attempted to reconcile the above stated issues with CPS Energy upon learning from the General Electric website that he had the newest advanced Smart Meter installed at his home. Requests to remove it went either unanswered or were answered with letters stating he didn't have a smart meter he had an OMR meter or Offsite meter Reading capability meter which is not a smart meter.

62  October 2, 2014 plaintiff was taken by ambulance to the Methodist Hospital Emergency room with symptoms of cardiac arrest. After 22 hours which required blood samples every half hour for the first 18 hours, 2 cat scans, infusion of numerous medications was given a chemically induced stress test that was returned negative nd allowed to return home. The cost of which was $43,000 plus

an additional $1180.00 for the ambulance which plaintiff is still being billed by the City of San Antonio.

63  After having received high exposure from two different smart meters installed and because of a titanium plate surgically implanted along the sciatic nerve on the femur of his right leg is now considered a sensitive receptor to electro-magnetic microwave radiation.

64  Plaintiff filed notice to remove meter and allowed 8 days for the utility to cure the issue at which time upon having no response did remove the meters in self-defense With statement that removal of equipment would incur a $50,000 charge along with a $100,000.00 charge should service be interrupted and an additional $10,000.00 per day of continued denial of legally entitled service being withheld in retaliation and discrimination for no other reason than acting in self-defense. (Exhibit 4)

65  From Nov 06 to July 1, 2015 the total for denial of service to a disabled person in retaliation has risen to $ 2,480,050.00 plus interest.

66  Plaintiff installed two brand new GE I70 electromechanical analog meters that were then removed by the utility company and taken six days later when his service was severed leaving him in the cold and dark.  When He contacted the sheriff to take a report of the theft of his personal equipment he was told by the sheriff's deputy that CPS had stated that anything connected to the grid they own. That being the case they can pay me the balance of my invested price of $25,000.00 and remove the rest of their equipment.

67 Since the meters were no longer providing power to home plaintiff discovered that the remote power down then power up that was happening every day was preventing full solar generation of power to the grid. Then the power up would reset the inverter which would default to charge the batteries from the grid instead of the solar panels. Plaintiff was being forced to buy power from the utility company that was erasing the amount he was putting on each previous month by recharging his batteries from CPS at which time the Mate Control unit would show BUYING. This is why the recorded energy usage had risen on his bills.

68 Plaintiff installed solar system to offset and sell excess power not to buy power when equipment is reset that reprograms settings..

69 Having the batteries not recharge from the solar panels and wanting to be recharged from the grid but there was no grid caused them to be undercharged and plaintiff would run out of battery power every single night around 1-2 am from just having 1 light on. A generator that he purchased for $549 was damaged beyond repair from the remote system starts that would reset the programming that limited the draw on the generator which was to protect it from over loading. Different remote commands continued up until January 17 when a never before received remote command finally put entire facility out of commission due to reprogramming signal received remotely that changed the firmware with incorrect software that forced the system to shut down and no longer produce any power at all. Due to under charging 3 of the batteries have been damaged and the rest suffered extreme shortening of their expected life cycles. Where thay may only last 2-3 years instead of the original 7-8.

70 When Plaintiff contacted the manufacturer for technical support to fix the problem he was told that he had violated the warranty and that the legal department gave specific instruction to not provide any service. As such Plaintiff makes the charge of Civil Conspiracy to commit fraud. Due to the remote capability engineered into the devices and the universal protocols used to exercise them for which the manufacturer refused to acknowledge and supply owner with necessary information to prevent it when it was determined that the act was being done without owners permission.

71 All of the factual claims are listed with regard to the actions of the CPS energy. Plaintiff contacted the Public Utility Commission who stated that CPS is not enforced by them and received the same response from the Texas Attorney General. Plaintiff does not understand how the municipally owned utility can get away with not having any oversight by another authority.

72 Plaintiff having filed in lower state Courts was running into issues of criminal judicial actions by court officers that were acted in collusion with defense counsel in an attempt to have the entire cause of action dismissed with prejudice.

73 Mr. Vandenberg was sending faxed letters to the judge directly regarding the case and filing judicial notice attached as a foot note on a motion of facts not relevant to the case which were meant to persuade the court that the pleadings of the plaintiff were from someone who had lost all sense of reality or was attempting to unjustly enrich themselves.

74 Plaintiff had filed a criminal report with the police department leveling charges against both the District Clerk and the Defense of tampering with a court record

(evidence) fraud under the color of law by demanding money to have a document filed even though plaintiff was proceeding indigent.

75  Then lying saying the Supreme Court of Texas Had passed a Misc. docket 9531 which demanded all e-filed documents required him to pay a fee which upon calling Patrick, the Clerk of the Supreme Court, was informed that no such order existed and he was being lied too.

76  The Document returned unfiled was a resetting of a court appearance for hearing on a motion for sanctions of opposing counsel. Defense requested a change stating his inability to make that day claiming depositions out of state.

77  Plaintiff submitted an amended setting which the clerk returned unfiled and at the same time the attorney Matthew Vandenberg sent a letter faxed to the Judges office stating that Plaintiff was unwilling to be cooperative and change the date since he would be out of town and since the date needed to be changed if the Judge would just not her the motion until the upcoming motion to dismiss for which there was not even a court date set since plaintiff still had 48 hours to file an amended petition which would have basically quashed the rule 91 motion to dismiss that he had filed.

78  Plaintiff having the district clerk's office commit the acts as stated plaintiff decided to Non-Suit without Prejudice and refile this cause of action in Federal District Court in hopes that justice may prevail.

79  Plaintiff affirms the above allegations as truthful and factual and can supply evidence to support all of the claims he has put forth upon request.

## V PRAYER

Plaintiff hereby commands the court to set this cause immediately for TRIAL.

Wherefore Michael T. Paul respectfully moves this Honorable COURT to grant his Motion for emergency injunction with restraining order and receive judgment against City of San Antonio for all damages. Be awarded COSTS. And have such further and motioned relief both in law and in equity to which this court deems he is entitled in this claim that is brought against the above listed participants.

DATE: March 05, 2015

/ S/ **Michael T. Paul**
Pro Se Litigant
9123 Easy Street
San Antonio, Texas 78266
210-294-4533
Mtp7389@hotmail.com